**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

CARL HOBBS,

                Plaintiff,

vs.                                  Case No. 3:13-cv-784-J-JRK

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.
_____/

## **OPINION AND ORDER**[1]

### **I. Status**

Carl Hobbs ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying his claim for disability insurance benefits ("DIB"). His alleged inability to work is based upon damaged nerves in his back, right wrist fusion, carpal tunnel syndrome, a rotator cuff tear, stomach problems, eye problems, trouble sleeping, weight problems, hearing problems, and memory loss. Transcript of Administrative Proceedings (Doc. No. 13; "Tr." or "administrative transcript"), filed November 19, 2013, at 182. On September 8, 2010, Plaintiff filed an application for DIB, Tr. at 153-54, alleging an

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 15), filed November 26, 2013; Reference Order (Doc. No. 17), entered November 27, 2013.

onset disability date of October 18, 2008,[2] Tr. at 12.  Plaintiff's claim was denied initially, Tr. at 57-58, and upon reconsideration, Tr. at 59-60.

On December 22, 2011, a hearing was held before an Administrative Law Judge ("ALJ"), during which Plaintiff and a vocational expert ("VE") testified.  Tr. at 28-54.  Plaintiff was represented by an attorney at the hearing.  Tr. at 12, 28, 35.  The ALJ issued an unfavorable Decision on February 24, 2012, finding Plaintiff not disabled from October 18, 2008, through December 31, 2010, Plaintiff's date last insured.  Tr. at 12-21.  On June 8, 2013, the Appeals Council denied Plaintiff's request for review, Tr. at 1-4, thereby making the ALJ's Decision the final decision of the Commissioner.  Plaintiff then commenced this action on July 3, 2013 under 42 U.S.C. § 405(g), by filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff raises one issue on appeal:  whether the ALJ "erred by not placing the appropriate weight on the opinions of [Plaintiff's] treating psychiatrist.  Pl.'s Mem. at 5 (capitalization and emphasis omitted).  On March 11, 2014, Defendant filed a memorandum addressing the issue raised by Plaintiff.  See Memorandum in Support of the Commissioner's Decision (Doc. No. 20; "Def.'s Mem.").  After a thorough review of the entire record and consideration of the parties' respective filings, the Commissioner's final decision is due to be

---

[2] Several application dates and onset disability dates are referenced throughout the administrative transcript.  Prior to this application, Plaintiff indicated filing approximately five to six applications for DIB, Tr. at 665, which may have caused some confusion leading to different dates being referenced. As indicated in the administrative transcript, Plaintiff initially alleged an onset date of January 5, 2001, Tr. at 153; however, this date was changed to reflect an onset date occurring after the conclusion of one of Plaintiff's pending DIB applications, Tr. at 178.  The ALJ also clarified the onset date at Plaintiff's hearing on December 22, 2011.  Tr. at 30-32.  Ultimately, the ALJ found the onset date for disability was October 18, 2008.  Tr. at 12.  Plaintiff does not contest this finding and indeed adopts it in his memorandum to this Court.  Memorandum in Support of Complaint (Doc. No. 19; "Pl.'s Mem."), filed January 21, 2014, at 2.

reversed and remanded for further proceedings for the reasons stated in this Opinion and Order.

## **II.  The ALJ's Decision**

When determining whether an individual is disabled,[3] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 14-20. At step one, the ALJ observed that Plaintiff "did not engage in substantial gainful activity during the period from his alleged onset date of October 18, 2008 through his date last insured of December 31, 2010." Tr. at 14 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff suffers from "the following severe impairments: disorder of the spine, partial right rotator cuff tear, drug and alcohol abuse, affective disorder, anti-social disorder, and Kienblock's disease in the right wrist." Tr. at 14 (emphasis and citation omitted). At step three, the ALJ

---

[3] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

-3-

ascertained that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 15 (emphasis and citation omitted).

The ALJ determined Plaintiff has the following RFC:

> [Plaintiff can] perform light work as defined in 20 C[.]F[.]R[.] [§§] 404.1567(b) and 416.967(b), including the capability of lifting and carrying 20 pounds occasionally and 10 pounds frequently and sitting, standing, and walking up to 6 hours in an 8-hour work day. However, [Plaintiff] should be allowed a sit/stand option (the opportunity to alternate positions every 30 minutes). He can occasionally bend, stoop, kneel, crouch, crawl, balance, and squat. He should avoid climbing ladders, dangerous machinery, heights, and use of arm controls (pushing/pulling). He is limited to infrequent contact with the public and simple 1-2 step tasks with no quotas.

Tr. at 16 (emphasis omitted). At step four, the ALJ found Plaintiff "was unable to perform any past relevant work" as an automobile mechanic, fork lift driver, and refrigeration technician. Tr. at 19 (emphasis omitted). At step five, after considering Plaintiff's age (forty-one (41) on the alleged disability onset date), education ("at least a high school education"), work experience, and RFC, the ALJ determined that "there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed [through the date last insured.]" Tr. at 19 (citations omitted). Those jobs included "[h]ospital [p]roduct [a]ssembler," "[w]ire [a]ssembler," and "[e]lectrical [p]roduct [a]ssembler[.]" Tr. at 20. The ALJ concluded Plaintiff "was not under a disability . . . at any time from October 18, 2008, the alleged onset date, through December 31, 2010, the date last insured." Tr. at 20 (emphasis and citation omitted).

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)).  "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

### IV.  Discussion

Although Plaintiff's alleged disability stems mostly from physical problems, Plaintiff on appeal mainly focuses on the ALJ's findings relating to his mental condition.  Plaintiff

contends the ALJ erred in discounting the opinion of treating psychiatrist Chirag Desai, M.D. Pl.'s Mem. at 5-7.

## A. Applicable Law

The Regulations instruct ALJs how to appropriately weigh a treating psychiatrist's[4] opinion.[5] See 20 C.F.R. § 404.1527(d). Because treating psychiatrists "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating psychiatrist's opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2). When a treating psychiatrist's opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering factors such as the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the psychiatrist. 20 C.F.R. § 404.1527(c).

If an ALJ concludes the opinion of a treating psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good

---

[4] A treating psychiatrist is a psychiatrist who provides treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by evidence showing that the claimant sees or has seen the psychiatrist with a frequency consistent with accepted practice for the type of treatment and/or evaluation required for the condition. See 20 C.F.R. § 404.1502.

[5] Treating sources' opinions are statements from treating physicians, treating psychologists, and the like that reflect judgments about the nature and severity of the claimant's impairment, including symptoms, diagnosis, prognosis, what the claimant can still do despite the impairment, and physical or mental restrictions. 20 C.F.R. § 404.1527(a)(2); 20 C.F.R. § 404.1513(a).

cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating psychiatrist's own records.  Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).  The ALJ must "state with particularity the weight given to different medical opinions and the reasons therefor."  Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440.

### B. Dr. Desai's Opinion

Dr. Desai began treating Plaintiff at Shands Jacksonville for depression in December 2010, Tr. at 658-60, and Dr. Desai indicated Plaintiff had seen a psychiatrist since 2007, Tr. at 645.  The administrative transcript also documents that Plaintiff saw a psychiatrist at Shands Jacksonville as early as 2007.  Tr. at 646-47.  Dr. Desai saw Plaintiff a total of four times.  Tr. at 658-66.  Plaintiff's first visit to Dr. Desai was on December 27, 2010.  Tr. at 658-60.  Plaintiff reported his mood as a three out of ten, angry feelings "all the time," little to no energy or motivation, constant passive suicidal ideation, frequent panic attacks, and occasional nighttime visual hallucinations of seeing snakes.  Tr. at 658.  Plaintiff felt his current medicine regimen could be improved, and Dr. Desai agreed.  Tr. at 658-59.  Dr. Desai added a brief trial of Seroquel XR 150 mg to assist with Plaintiff's anger and other factors.  Tr. at 659.  Dr. Desai also referred Plaintiff to individual therapy.  Tr. at 659.

Plaintiff followed up with Dr. Desai on March 24, 2011. Tr. at 661-62. Though Plaintiff's mood increased to a four to five out of ten, Plaintiff indicated the Seroquel XR was not fully effective. Tr. at 661. Additionally, Plaintiff no longer reported suicidal ideation, and Dr. Desai stated Plaintiff's anxiety symptoms "appear[ed] to be somewhat better." Tr. at 661. Plaintiff continued to report variability with sleep, appetite, and energy level. Tr. at 661. At the end of Plaintiff's visit, Dr. Desai decided to increase Plaintiff's Seroquel XR regimen from 150 mg to 300 mg and recommended Plaintiff continue individual therapy. Tr. at 661.

Plaintiff's third visit was on June 9, 2011. Tr. at 663-64. Plaintiff arrived timely, having just come from a session with his individual therapist. Tr. at 663. Plaintiff reported to Dr. Desai that his mood was "somewhat 'better,'" a five out of ten, but Plaintiff continued reporting some issues of depression, anxiety, and occasional auditory hallucinations. Tr. at 663. Plaintiff believed Seroquel was somewhat helpful, but still felt there was room for improvement. Tr. at 663. Dr. Desai decided to discontinue Seroquel and instead prescribe Plaintiff Abilify at 5 mg. Tr. at 663. Dr. Desai indicated he would "likely continue further dose titration [of Abilify] for clinical efficacy." Tr. at 663. Plaintiff was also to continue individual therapy sessions. Tr. at 663.

Plaintiff's last visit with Dr. Desai that is documented in the administrative transcript was on September 9, 2011. Tr. at 665-66. At this time, Plaintiff was taking 7.5 mg of Abilify, which Plaintiff was "quite pleased with." Tr. at 665. Plaintiff felt Abilify was "helping substantially with his irritability as well as anxiety symptoms." Tr. at 665. Plaintiff was also no longer having any problems with sleep, appetite, or energy level. Tr. at 665. Dr. Desai indicated Plaintiff "respond[ed] very well to supportive psychotherapy." Tr. at 665. Plaintiff

-8-

reported no visual hallucinations and occasional auditory hallucinations of a door knocking. Tr. at 665. Dr. Desai recommended Plaintiff continue on his current medicine regimen and follow-up with Dr. Desai in one to two months. Tr. at 665.

On November 1, 2011, Dr. Desai completed a Medical Assessment of Ability to do Work Related Activities (Mental) ("Medical Assessment") in which he opined Plaintiff had moderate to marked limitations in making occupational adjustments, which was supported by "clinical interviews over the past year." Tr. at 643-44. Plaintiff also had moderate to marked limitations making personal/social adjustments, as well as marked limitations in making performance adjustments, due to "severe depression [and] anxiety which adversely impact [Plaintiff's] ability to pay attention or concentrate for extended periods of time." Tr. at 644. Dr. Desai indicated he expected Plaintiff to miss work four to seven days per month due to his condition. Tr. at 645.

## C. Analysis of ALJ's Findings

The ALJ accurately summarized Dr. Desai's findings in the Medical Assessment of Ability to do Work Related Activities (Mental), Tr. at 18, and then stated:

> Dr. Desai's opinions are given little weight as they are inconsistent with his own treatment records (from 4 visits) in which he noted that [Plaintiff] improved with medication and was somewhat non-compliant with recommended treatment as he did not make an effort to attend the chronic pain group therapy sessions. Furthermore, this opinions [sic] is beyond the claimant's last date insured. Dr. Desai discharged [Plaintiff] back to his primary care physician's care as he had remained stable and due to non-compliance with recommended treatment.

Tr. at 18 (citations omitted).

Plaintiff argues the reasons articulated by the ALJ for discounting Dr. Desai's opinion are insufficient and are not supported by substantial evidence in the record. See Pl.'s Mem.

at 5-7. Specifically, Plaintiff contends the ALJ's reliance on alleged inconsistencies between Dr. Desai's opinion and his treatment notes is not supported by substantial evidence because Dr. Desai's opinions are consistent. See id. at 5, 7. Accordingly, Plaintiff asserts Dr. Desai's opinions should be given great weight. Id. at 7.

The undersigned finds the ALJ did not sufficiently articulate the reasons for discounting Dr. Desai's opinion, and/or the reasons stated are not supported by substantial evidence in the record. Indeed, in discounting Dr. Desai's opinion, the ALJ either erroneously relied on old notes of other physicians, while attributing them to Dr. Desai, or inaccurately summarized the content of Dr. Desai's notes. A more detailed discussion follows.

The ALJ's first reason for discounting Dr. Desai's opinion in the Medical Assessment is because Dr. Desai's opinion is "inconsistent with his own treatment records (from 4 visits) in which he noted that [Plaintiff] improved with medication and was somewhat non-compliant with recommended treatment as he did not make an effort to attend the chronic pain group therapy sessions." Tr. at 18. By specifically highlighting Plaintiff's past noncompliance in group therapy sessions, Tr. at 18, the ALJ mischaracterized the facts in Dr. Desai's notes and opinion, Tr. at 643-45, 658-66. Dr. Desai referred Plaintiff to individual therapy, Tr. at 659, not to chronic pain group therapy as the ALJ states, Tr. at 18. Further, on three occasions, Dr. Desai reported Plaintiff was attending individual therapy, Tr. at 661, 663, 665, which belies the ALJ's contention that Dr. Desai noted Plaintiff was not compliant with the recommended treatment.

The ALJ may have mistakenly considered other doctors' notes at Shands Jacksonville, while attributing the notes to Dr. Desai, in finding Plaintiff was noncompliant. Dr. Satyen Madkaiker met with Plaintiff on October 30, 2007, at Shands Jacksonville and scheduled Plaintiff for therapy sessions with Mr. Ed Paat. Tr. at 646-47. On April 16, 2008, Dr. Steven Cuffe, also at Shands Jacksonville, indicated Plaintiff was not attending his therapy sessions. Tr. at 649. Plaintiff was discharged, Tr. at 650, but returned back to Shands Jacksonville to visit with Dr. Eduardo Sanchez on February 2, 2009. Tr. at 652-53. Instead of being noncompliant, Dr. Sanchez noted on November 9, 2009, that Plaintiff was "doing well with the present therapeutic regimen." Tr. at 655. Plaintiff's last visit with Dr. Sanchez was on May 7, 2010. Tr. at 657. So, regardless of whether the ALJ was erroneously attributing these doctors' notes to Dr. Desai in finding Plaintiff noncompliant with therapy, these notes do not support the noncompliance finding.

The ALJ stated as a second reason for discounting Dr. Desai that "Dr. Desai discharged [Plaintiff] back to his primary care physician's care as he had remained stable and due to non-compliance with recommended treatment." Tr. at 18. Again, Dr. Desai did not indicate Plaintiff was noncompliant, and he did not discharge Plaintiff to his primary care physician. Dr. Desai recommended that Plaintiff follow-up with him in one to two months after Plaintiff's last appointment on September 9, 2011. Tr. at 665. Dr. Desai neither discharged Plaintiff nor mentioned Plaintiff remaining "stable." Tr. at 643-45, 658-66. It is possible that the ALJ confused Dr. Desai's treatment notes with other earlier medical records from Shands Jacksonville. For example, Dr. Cuffe indicated Plaintiff was not attending therapy sessions and eventually discharged Plaintiff in 2008. Tr. at 649-50. In contrast, Dr.

Desai treated Plaintiff in 2010 and 2011. Tr. at 658-66. As such, substantial evidence does not support this reason for discounting Dr. Desai's opinion.

Third, the ALJ discounted Dr. Desai's opinion in the Medical Assessment in part because "this opinions [sic] is beyond the claimant's last date insured." Tr. at 18. However, Dr. Desai began treating Plaintiff on December 27, 2010, Tr. at 658, which falls during the relevant time period, before Plaintiff's date last insured, December 31, 2010, Tr. at 12. While Dr. Desai's Medical Assessment was completed after Plaintiff's date last insured, Tr. at 645, opinions rendered retrospectively may still be relevant to an ALJ's determination. "[A]s a simple matter of logic, even if medical evidence (such as the post-date last insured opinions of Dr. [Desai]) did not exist at the date last insured, that fact standing alone does not mean that such evidence lacks probative value as to a plaintiff's pre-date last insured impairments." Freismuth v. Astrue, 920 F. Supp. 2d 943, 951 (E.D. Wis. 2013) (holding the ALJ erred by not considering the post-date last insured opinion of claimant's treating physician); but see Mason v. Commissioner of Social Sec., 430 F. App'x 830, 832-33 (11th Cir. 2011) (holding an ALJ does not err in discounting a physician's opinion when physician did not see claimant until after her date last insured and no corroborating medical evidence indicated the claimant suffered from disability during the relevant time period).

A retrospective diagnosis may be considered if it is validated by evidence within the relevant time period. Estok v. Apfel, 152 F.3d 636, 640 (7th Cir. 1998) (citing Adams v. Chater, 93 F.3d 712, 714 (10th Cir.1996); Perez v. Chater, 77 F.3d 41, 48 (2d Cir.1996); Jones v. Chater, 65 F.3d 102, 103-04 (8th Cir.1995); Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457-62 (9th Cir.1995); Evangelista v. Sec'y of Health & Human

Servs., 826 F.2d 136, 140 (1st Cir.1987)).  Dr. Desai's retrospective opinion should not be discounted merely because of the date it was rendered.  Dr. Desai began treating Plaintiff during the relevant time period, and Dr. Desai's opinion may be corroborated by Plaintiff's other doctors at the same practice.  As indicated by Dr. Desai when rendering the opinion, Plaintiff began seeing a psychiatrist at Shands Jacksonville in 2007.  Tr. at 645-46.  In his own treatment notes, Dr. Desai considered and referred to the treatment notes of Dr. Sanchez, another physician at Shands Jacksonville who began treating Plaintiff in early 2009. Tr. at 658.  Thus, Dr. Desai considered, at minimum, three years of Plaintiff's medical history during the relevant time period before rendering an opinion.  The ALJ erred in not considering Dr. Desai's opinion merely because it was written after Plaintiff's date last insured, as Dr. Desai's opinion was relevant and corroborated by other evidence in the record.

Defendant contends the ALJ's opinion is supported by substantial evidence, and Defendant provides a number of reasons (that the ALJ failed to provide) why the administrative transcript allegedly supports the ALJ's election to reject Dr. Desai's opinion.  Def.'s Mem. at 5-12.  Although there may be reasons to properly discredit Dr. Desai's opinion, the ALJ has failed to sufficiently articulate those reasons, and Defendant may not correct this error.  Defendant's reasons, regardless of whether they are supported by substantial evidence, cannot bolster or replace the ALJ's reasons or lack thereof.  Defendant's analysis cannot serve as post hac justifications to save the ALJ's otherwise infirm decision.  See Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir. 1984) (instructing that it would be improper "to affirm simply because some rationale might have supported the

ALJ's conclusion. Such an approach would not advance the ends of reasoned decision making" (citation omitted)). It is not the duty of Defendant or the Court to supply reasons for the ALJ's finding; rather, that duty rests with the ALJ. See Austin v. Astrue, No. 5:07cv52/MCR/EMT, 2008 WL 2385520, at *8 n.7 (N.D. Fla. June 9, 2008) (unpublished) (recognizing the Commissioner's arguments in support of the ALJ's discounting of a treating physician's opinion, but stating that "[w]hile [the arguments] may be true, the ALJ did not make these findings"); see also Green v. Shalala, 51 F.3d 96, 100-01 (7th Cir. 1995); Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994); Zblewski v. Schweiker, 732 F.2d 75, 78-79 (7th Cir. 1984); Cline v. Sullivan, 939 F.2d 560, 563-69 (8th Cir. 1991).

## V. Conclusion

For the reasons stated above, the undersigned finds the rationale stated by the ALJ for discounting Dr. Desai's opinion insufficient and/or not supported by substantial evidence in the record. Judicial review is frustrated because the ALJ erred in either erroneously relying on other doctors' old notes while attributing them to Dr. Desai, or inaccurately summarizing Dr. Desai's notes. Additionally, the ALJ erred in not considering Dr. Desai's opinion merely because it was written after Plaintiff's date last insured. Accordingly, it is

**ORDERED**:

1.  The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

> (A)  Reevaluate the medical opinion of Dr. Desai and state with particularity the weight afforded; if the treating opinion is discounted, adequate

      reasons showing good cause for discounting shall be provided and shall be supported by substantial evidence; and

  (B) Take such other action as may be necessary to resolve this claim properly.

2. The Clerk is further directed to close the file.

3. In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) fee application be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b)).

**DONE AND ORDERED** at Jacksonville, Florida on April 22, 2014.

            James R. Klindt
            JAMES R. KLINDT
            United States Magistrate Judge

cjn
Copies to:
Counsel of Record